IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**ADVOCACY TRUST, LLC, as Special
Administrator of the Estate and on behalf
of the Wrongful Death Beneficiaries of
Jeffrey William McKenzie, Deceased**                    PLAINTIFF

v.                          No. 3:24-cv-8-DPM

**BLM GROUP USA CORPORATION,
f/k/a BLM-ADIGE USA CORP;  BLM
S.P.A.;  and JOHN  DOES 1-10**                    DEFENDANTS

### ORDER

A tube-bending machine crushed Jeffrey McKenzie at his job in
Batesville, Arkansas.  He was rushed to a local emergency room, then
flown to Little Rock.  He died mid-flight.  Advocacy Trust, LLC
is the special administrator of his estate.  It brings various tort claims
against the machine's Italian manufacturer, BLM S.p.A., and American
distributor, BLM Group USA Corporation.  (For ease, the Court will
refer to them as "BLM Italy" and "BLM USA.")  BLM Italy moves
to dismiss for lack of personal jurisdiction.  Advocacy Trust resists
dismissal and seeks to conduct some jurisdictional discovery.
BLM USA, the distributor, doesn't challenge this Court's jurisdiction
over it.

\*

Arkansas's long-arm statute reaches as far as the Due Process Clause allows. Ark. Code Ann. § 16-4-101(B). The parties agree there's no general jurisdiction. *Doc. 18 at 2.* BLM Italy — an Italian corporation with its principal place of business in Italy — isn't at home in Arkansas. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 358-59 (2021). So the familiar question arises: Is there specific personal jurisdiction over BLM Italy, such that it should reasonably expect to be haled into this Court for this accident? *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-94 (1980). Viewing the record in the light most favorable to Advocacy Trust, the answer is no. *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).

The inquiry focuses on the relationship between the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). Here are the relevant jurisdictional facts. In 2018, BLM Italy shipped a tube-bending machine — the "L Bender" — to BLM USA's facilities in Michigan. (BLM USA is a Michigan corporation with its principal place of business in Michigan.) BLM USA kept that machine as "stock product" for two years. *Doc. 13-1 at 2.* In 2020, BLM USA sold the L Bender to McKenzie's employer, Intimidator, LLC. BLM USA's employees installed the L Bender at Intimidator's facility in Arkansas. That machine fatally injured McKenzie in February 2022.

BLM Italy's relationship with BLM USA is the core of Advocacy Trust's personal jurisdiction argument.  Advocacy Trust alleges the two companies are "essentially one and the same entity." *Doc. 1 at 4.* BLM Italy denies this, offering the affidavit of its HR Administration Manager, Flavia Borgonovo.  She explained the corporate relationship: "BLM Italy owns 100% of BLM Group (UK) LTD, which owns 100% of BLM USA." *Doc. 13-1 at 2.*  There is no overlap between the companies' "officers, directors, employees, agents, [or] representatives." *Ibid.* She also described the business relationship: "BLM USA is BLM Italy's exclusive distributor for the entire United States market—not just Arkansas." *Doc. 13-1 at 2* (emphasis removed).  Accordingly, she says, "BLM Italy did not know the L Bender was being sent to Arkansas by BLM USA, did not contract with Intimidator, and did not provide any warranty to Intimidator for the L Bender at issue." *Ibid.*  Advocacy Trust offers no contrary proof.

The facts of record—exclusive, nationwide distribution through a sub-subsidiary—do not establish specific jurisdiction over BLM Italy. *Doc. 18 at 2-3.*  First, BLM Italy's distribution scheme shows its intent to serve the national market;  it does not show purposeful availment of *Arkansas's* laws and protections. *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011) (plurality opinion);  *see also Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 576 (8th Cir. 1992).  Second, the companies' parent/subsidiary/subsidiary relationship does not, on this record,

suggest that BLM USA was BLM Italy's alter ego. *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 648-49 (8th Cir. 2003). Absent such a showing, BLM USA's suit-related contacts cannot be imputed to BLM Italy. *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008).

Advocacy Trust's reliance on *Barone v. Rich Bros. Interstate Display Fireworks, Co.*, 25 F.3d 610 (8th Cir. 1994), and *Clune v. Alimak AB*, 233 F.3d 538 (8th Cir. 2000), is misplaced. That precedent makes plain that specific personal jurisdiction can arise out of or relate to a product that moves in the stream of commerce. But the stream is a metaphor; it is not a separate jurisdictional theory. *McIntyre*, 564 U.S. at 881-82. This Court must focus on the relationship between BLM Italy, Arkansas, and this case. *Walden*, 571 U.S. at 283-84. All material circumstances considered, *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012), Advocacy Trust has not made a *prima facie* case— either under a stream-of-commerce theory or an agency theory—that BLM Italy has minimum contacts with Arkansas.

\*

Last, the Court declines Advocacy Trust's request to conduct jurisdictional discovery. Its assertions about BLM Italy's control over BLM USA are speculative and conclusory. *Doc. 24 at 6.* And much of the information it seeks has already been covered in Borgonovo's detailed affidavit. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011).

\*       \*       \*

Motion to dismiss, *Doc. 13*, granted.  The claims against BLM Italy are dismissed without prejudice;  and BLM Italy is dismissed as a defendant.  Motion for jurisdictional discovery, *Doc. 23*, denied.

So Ordered.

*D.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

2 January 2025