**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**ADVOCACY TRUST, LLC, as Special Administrator of the Estate and on behalf of the Wrongful Death Beneficiaries of Jeffrey William McKenzie, Deceased** **PLAINTIFF**

**v.** **No. 3:24-cv-8-DPM**

**BLM GROUP USA CORPORATION, f/k/a BLM-ADIGE USA CORP; and JOHN DOES 1-10** **DEFENDANTS**

**ORDER**

The L Bender—a tube-bending machine—crushed Jeffrey McKenzie at his job in Batesville, Arkansas. He was a lead machine operator at Intimidator, a lawn mower and utility vehicle manufacturer. McKenzie was training a recent hire, Ryan Crank, how to use this machine. Crank was operating the L Bender at the machine's control panel. Because of that panel's location, his back was turned, and he didn't see McKenzie standing near the machine's bending arm. Because of the radar scanner's location, the machine didn't lock out when McKenzie got close to the danger zone. When Crank engaged the L Bender, the arm swung closed, crushing McKenzie. He died from his injuries. The photograph below shows McKenzie, Crank, and the L Bender moments before the accident.




Advocacy Trust is the special administrator of McKenzie's estate. It brings claims for strict liability, negligence, and failure to warn against BLM Group, the L Bender's distributor and installer. The deep issue is the location, or re-location, of the control panel and radar scanner. BLM Group moves for summary judgment. Advocacy Trust resists, saying there are issues of fact for trial.

*

A preliminary issue. BLM Group seeks to exclude some opinions by Advocacy Trust's expert witness, Peter Chen. First, the Court excludes Chen's conclusion that BLM didn't install the control panel and radar scanner in the correct places. He's right, of course, on the preliminary point: the panel and scanner were mislocated the day of the accident. But his last step—that BLM was responsible for their mislocation when McKenzie was injured—lacks a sufficient record

foundation. It isn't based on any scientific authority or principle. *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). Chen speculates that BLM Group installed these things where they were on the day of the accident based on the lack of bolt marks on the floor outside the enclosure. *Doc. 33-4 at 9*. He also cites the OSHA report—but the referenced parts of that report deal with mislocation in general not mislocation at installation. *Doc. 33-4 at 9 & 17; Doc. 33-11 at 6–8*. It's undisputed, though, that Intimidator was responsible for attaching the control panel and scanner to the floor. *Doc. 33-10 at 17; Doc. 33-4 at 9*. And Chen's speculation contradicts the undisputed evidence of those with personal knowledge of the location facts. *Doc. 33-6 & 33-7*. Second, the Court doesn't exclude Chen's opinion that BLM Group's one-operator warning was insufficient. He says manufacturers and distributors should assume multiple users at one time for large machines like the L Bender. *Doc. 33-4 at 11*. Therefore, a warning alone isn't enough. *Ibid*. The L Bender needed to be properly safeguarded. Here Chen applied engineering principles and safety guidelines to the facts of record. *Hill v. Southwestern Energy Co.*, 858 F.3d 481, 486–87 (8th Cir. 2017). Last, Chen's opinion about McKenzie's post-accident statements isn't excluded. Chen applied his findings to the issue of McKenize's fault. He's entitled to address McKenzie's statements.

*

In November 2020, BLM employee Josh Hougton installed the L Bender at Intimidator's facility in Batesville. He says he installed the L Bender's control panel outside of the machine enclosure, facing the machine. *Doc. 33-6 at 1.* He installed the radar scanner at the front of the enclosure—where it would scan the area around the machine's bending arm and shut the L Bender down if someone entered the "danger zone." *Ibid.* Jorge Lazo, another BLM employee, twice traveled to Batesville to train Intimidator employees to use the L Bender. Lazo says that in January 2021, two months after installation, the machine's control panel and radar scanner were in their original locations. *Doc. 33-7 at 1–2.* And on his second visit in September 2021, ten months after installation, the control panel and radar scanner hadn't been moved. *Ibid.* On the day of the accident, in February 2022, things were different. See the photograph. The L Bender control panel was inside the enclosure, and reversed, facing away from the machine. The floor scanner was on a table next to the control panel, *Doc. 33-1 at 20.* In that location, it couldn't properly scan the danger zone. Intimidator says it doesn't know where BLM installed the control panel and radar scanner. *Doc. 33-1 at 13–14, & 22.* And Intimidator doesn't know if they were ever moved before the accident. *Doc. 33-1 at 29.*

Advocacy Trust hasn't offered sufficient evidence that BLM Group was the proximate cause of McKenzie's injuries to create a jury

issue. Proximate cause is "that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Lovell v. Brock*, 330 Ark. 206, 215, 952 S.W.2d 161, 166 (1997). Causation is typically a jury question. But, where "reasonable minds could not differ . . .[,]" proximate cause becomes a question of law for the Court. *Ibid*. There's no genuine dispute that, after installation and months of operation, sometime before the accident the L Bender's control panel and radar scanner were moved. BLM Group didn't do the moving. *Doc. 33-6 & 33-7*. Even if Chen's contrary opinion were admitted into evidence, the jury would have to speculate to conclude otherwise. Chen's "no bolt holes, therefore no relocation" theory is a conjecture, adrift from the undisputed facts about Intimidator's obligation to attach the L Bender to the floor (or not) and where those with personal knowledge saw the control panel and the radar scanner installed and operating. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–90 (1993); Fed. R. Evid. 702.

The location changes were efficient intervening causes—they broke the natural and continuous sequence toward injury. Facing the control panel away from the machine, and placing the scanner where it couldn't properly scan the machine, made the L Bender unreasonably dangerous. Those location changes proximately caused McKenzie's injuries.

The L Bender had other safety features. BLM didn't install a light curtain at the entry of the machine enclosure. *Doc. 33-1 at 42*. And there were gaps in the fencing around the machine enclosure. *Doc. 33-11 at 10*. But taking the disputed record about why the light curtain was missing and why there were gaps left in the enclosure in the estate's favor, these facts don't require a trial. McKenzie wasn't an uninformed worker, or an inattentive visitor, who wandered into the L Bender. He was the L Bender's trained operator. As to him, the light curtain's absence and the enclosure's gaps made no difference. As to Crank, the same conclusion holds. If present and operating, the light curtain could have locked out the machine when McKenzie crossed over. *Doc. 33-11 at 7*. But the light curtain functioned only when someone entered the area around the machine during a "bending stroke." *Ibid*. That didn't happen. It's undisputed that McKenzie entered the workstation before Crank engaged the machine. Even Advocacy Trust's own expert conceded that the light curtain probably wouldn't have prevented this accident. *Doc. 33-11 at 45*. The undisputed changes to the location of the control panel and radar scanner were the intervening proximate cause of McKenzie's injuries. Those changes "broke any causal chain" between BLM's conduct and McKenzie's injuries. *Lovell*, 330 Ark. at 216, 952 S.W.2d at 166.

BLM Group is entitled to summary judgment on Advocacy Trust's failure to warn claim, too. BLM Group had a duty to give

adequate warnings of the foreseeable dangers of operating the L Bender. *West v. Searle & Co.*, 305 Ark. 33, 42, 806 S.W.2d 608, 613 (1991). In the L Bender's user manual, BLM Group warned users not to have more than one machine operator at a time. Advocacy Trust says the manual's warning was inadequate; a warning sign, it continues, should have been posted on the machine.

A warning's adequacy is generally a fact question for the jury. *Bushong v. Garman Co.*, 311 Ark. 228, 233, 843 S.W.2d 807, 810 (1992). If the warning is inadequate, the law presumes the user would have read and heeded an adequate one. *Bushong*, 311 Ark. at 234, 843 S.W.2d at 811. In the circumstances here, however, an additional warning would have been futile. *Ibid*. Crank hadn't read any of the warnings in the L Bender safety manual. *Doc. 33-9 at 5*. He didn't know there was a safety manual. *Doc. 33-9 at 5–6 & 12*. Crank did know, however, that only one person should use the machine at a time. *Doc. 33-9 at 8*. McKenzie didn't need a further warning, either. He was the lead machine operator. He was trained on how to operate the L Bender. *Doc. 33-1 at 29*. His statement after the accident supports his knowledge of the one-operator rule. He told Crank and other BLM employees: "I'm sorry. I shouldn't have been there. It was my fault." *Doc. 33-8 at 11*. Plus, when this bad accident happened, there was a sign posted in the machine work area warning against multiple operators—Intimidator posted it. *Doc. 33-1 at 25*. This is not a case where the

danger wasn't known. *Compare Hergeth, Inc. v. Green*, 293 Ark. 119, 123, 733 S.W.2d 409, 411 (1987). Another sign or further warning on the machine would have been duplicative and futile in these circumstances.

Last, the alleged failure to warn wasn't the proximate cause of McKenzie's injuries. *Hergeth*, 293 Ark. at 123–25, 733 S.W.2d at 411–12. Because the control panel was facing away from the machine, Crank couldn't see that McKenzie was doing something with it. "But the way the machine was set up, my back was to it when I start the machine." *Doc. 33-9 at 6*. And because the radar scanner wasn't properly located, Crank could engage the machine despite McKenzie being in the danger zone.

*

The Court grants BLM Group's motion for summary judgment, *Doc. 33*. BLM Group's embedded motion to exclude Peter Chen's opinions is partly granted and partly denied. Judgment will issue.

So Ordered.

D.P. Marshall Jr.
United States District Judge

10 September 2026